HALL ET AL. *v.* AMERICAN BRAKE SHOE CO.

[Cite as Hall v. American Brake Shoe Co., 13 Ohio Misc. 35.]

(No. 23490—Decided October 25, 1965.)

Court of Common Pleas of Athens County.

*Messrs. Clayman, Sigall, Jaffy & Taylor,* for appellant.
*Messrs. Alexander, Ebinger & Holschuh,* for appellee.
*Mr. William Saxbe,* attorney general, and *Mr. Bernard Heffernan,* for Board of Review.

BOLIN, J.   This is an appeal from the decision of the Board of Review of the Ohio Bureau of Unemployment Compensation.   The board of review found that the appellants, former employees of the American Brake Shoe Company, were not entitled to participate in the unemployment compensation fund of the state of Ohio.   The court has heard oral arguments by counsel for both parties and the parties have submitted briefs upon the law.   The court has read the transcript and feels that the testimony led to a stipulation which is as follows on page 128, 129 and 130 of the transcript:

"The Referee: Well, when I say 'dispute' I say that there was a dispute over the terms of the contract and not a labor dispute as we think of it in the act.

"Mr. Clayman: That's right.   That's right.

36

"The Referee: An actual strike as occurred on April 11th.

"Mr. Clayman: Yes.

"The Referee: Now, negotiations may or may not within my mind be regarded as a labor dispute. What the courts think of that matter is something that they have spoken on in various manners.

"Again, this is a matter of briefing.

"Mr. Holschuh: Yes, I think, your Honor, we can leave it. It's my understanding that the referee is not saying or certainly not even implying that there was not a labor dispute at this time within the meaning of the act. He's saying that that is a matter that will have to be determined under the facts in the law.

"Mr. Clayman: All right.

"The Referee: Our whole issue here today is whether or not negotiations of this type can be regarded as a disqualifying provision under the Ohio law.

"Mr. Holschuh: Yes, Your Honor, and I was trying to show the nature of those negotiations, the acrimony, the fact that they were sharply in disagreement as bearing on that very question.

"The Referee: I think that most contract negotiations reach that stage, and we will have to recognize that.

"Mr. Holschuh: If Mr. Clayman will stipulate they reached that stage here on February 28th, I'll pass it and we can go on.

"Mr. Clayman: What is the exact stage? Describe that stage. I may be perhaps willing—

"Mr. Holschuh: Well, I'm referring to February 27, February 28.

"Mr. Clayman: The parties weren't happy with each other on February 28.

"Mr. Holschuh: That the parties were in sharp disagreement with each other on basic terms of employment and the relationship was one of acrimony and hostility. Now, would you—

"Mr. Clayman: Oh, no. Wait a minute. I don't intend to be philosophic about the use of words, but in labor re-

lations we often get situations where the relationship appears to be acrimonious and hostile at the time.

"I would think we would be doing a disservice to both sides in their collective bargaining relations in the future if we were now to put the stamp of acrimony and hostility upon that relationship that existed then.

"I would say that there was sharp disagreement between the parties and I would say that they were unhappy and impatient with each other at that time, and I certainly would be willing to stipulate that.

"Mr. Holschuh: So stipulated.

"The Referee: Dave, may we reduce it to heated discussions?

"Mr. Clayman: All right.

"Mr. Holschuh: So stipulated, and I think we can pass that. Your Honor, if I may have one minute to check my notes, I think we will be finished with this witness."

At the time this appeal was filed, or almost simultaneously with it, the decision of the Supreme Court of the state of Ohio was published in the case of *Leach, Administrator, Bureau of Unemployment Compensation, et al.,* v. *Republic Steel Corp. et al.,* 176 Ohio St. 221. This court is of the opinion that the *Leach* decision covers the present case in that the present case was a labor dispute *prior to the* strike and the *Leach case* was the result of a labor dispute and strike, but subsequent thereto.

There is unquestioned proof in the transcript that the general public and especially, tire manufacturers throughout the United States, became aware that the contract between the American Brake Shoe and the union was to terminate effective February 28, 1964, and that as a result the tire manufacturers withdrew the molds which were in the process of manufacture and caused a slow termination of employment leading up to the final strike date of April 11, 1964.

Section 4141.29(D)(1)(a), Revised Code, "His unemployment was due to a labor dispute other than a lockout at the factory * * *. The court in the *Leach case* on page 223: "As generally understood, a 'strike' is a cessation of

work by employees in an effort to obtain more desirable terms with respect to wages, working conditions, etc., whereas a 'labor dispute' is of broader scope and includes a *controversy* between employer and employees concerning wages, working conditions or terms of employment." The testimony on page 70 shows that the sixty-day notice was filed in December of 1963, that negotiations between the employer and the union began on January 7, 1964, and continued through the termination period of February 28 on up until the actual formal strike date of April 11, that the negotiations were still going on at the time the hearing was held before the board of review. On page 78 the testimony shows that United States Rubber Co., Firestone Rubber Co., Sears Roebuck Company and General Tire Company had their molds removed on or about February 28, 1964. This consisted of 176 to 170 tire molds being moved as shown on page 80 and resulted in employees being notified not to report for work on March 2. The evidence further shows on pages 75 and 76 that the customers of the employer had been inquiring as to the headway made by the negotiations practically from the early part of December and as of February 28 approached, the inquiry became almost a daily occurrence. On February 18, there appeared a notice on the bulletin board at the plant that a strike vote had been taken and the vote to strike was approximately 208 for a strike and 6 not to strike. From that time on, the customers became jittery and finally removed their molds from the plant as heretofore stated, on February 28.

The court feels that the law of Ohio is very clear by not only the *Leach case,* but by prior decisions of the Supreme Court of the state of Ohio that a labor dispute which causes unemployment bars the employee from the benefits of the unemployment compensation law.

This court can not find that the decision of the board of review was unlawful, unreasonable or against the manifest weight of the evidence. It, therefore, affirms the decision of the board of review. Exceptions saved to appellants.

*Decision affirmed.*